WILL COUNTY WATER COMPANY, Plaintiff-Appellee, *v.* THE VILLAGE OF SHOREWOOD, Defendant-Appellant.

Third District   No. 82—540

Opinion filed July 29, 1983.—Rehearing denied September 19, 1983.

Thomas R. Wilson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellant.

Keith P. Schoeneberger, of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Will County Water Company, is a public utility organized under the laws of the State of Illinois. Its business is to provide sewage treatment service and public water supplies. Its activities are regulated by the Illinois Commerce Commission, as are the activities

of all public utilities.

In 1975, the plaintiff entered into a contract with the defendant, the village of Shorewood, to provide sewage treatment services, which contract provides in pertinent part:

> "After 250 homes, Troy Grade School and existing commercial establishments have been connected to the Village system, as provided above, the company will provide waste water treatment, *if and when sewer plant capacity is available, taking into account the Company's other obligation to provide service,* for up to an additional fifty homes, or equivalent, connected to the Village system during any twelve month period." (Emphasis added.)

In September 1979, the plaintiff sent a letter to the defendant stating that it would provide waste water treatment service to no additional customers. After receiving that letter, the defendant village added four additional residences to the sewer system. The plaintiff public utility brought suit seeking a judgment to declare the rights of the parties under the contract and seeking an injunction prohibiting all further connections to the sewer mains in the village of Shorewood. The defendant counterclaims, seeking a money judgment for amounts it alleged was due under the terms of the same contract.

The circuit court of Will County, in a judgment order which declared the rights of the parties under the contract, found that the defendant village had no right to demand that additional homes be connected to the village sewer system which was serviced by the plaintiff utility. At the same time, the circuit court refused to order injunctive relief to prevent any further connections to the sewer system, and the circuit court entered a money judgment for the defendant on its counterclaim. The village appeals that part of the circuit court order which declared the rights of the parties under the contract.

Two issues raised by the appellant village in its oral and written arguments before this court appeared to misconstrue the order of the circuit court previously entered in this cause. The village contends that injunctive relief is available in contract cases only where the contracts are clear, definite and certain, that is free of any ambiguity in language. The village also contends that injunctive relief is only available upon a showing by clear and convincing evidence of irreparable harm. In presenting both of these contentions for our review, the appellant urges that the contract was not free of ambiguity, but rather was subject to differing interpretations, and that there was no showing of irreparable harm, let alone such a showing by clear and con-

vincing proof. The village concludes, therefore, that the circuit court erred in granting injunctive relief.

Whether the village is correct in its contentions that injunctive relief will not lie based upon the record before us is a matter we need not determine, for a careful reading of the lower court order discloses that no injunctive relief was ordered. In its memorandum opinion, the circuit judge states that

"The First Amended Complaint of plaintiff prays, in paragraph A, B and C, for a declaration of the rights of the parties, and this court has done so above. Specifically as to paragraph C, this court finds that it was contrary to the terms of the contract for the Village to allow additional sewer connections after service of the notice by defendant company that the company had insufficient available waste treatment capacity to accommodate such new users. But as to paragraphs D, E and F, this court refuses to issue injunctive relief, for reasons stated above, and for the additional reason that, having declared the rights of the parties in regard to the issues herein, this court feels that injunctive relief is unnecessary."

Since we interpret the circuit court order as granting no injunctive relief, we believe the appellant's arguments concerning the standards for granting such relief are inapplicable to the facts before us.

An additional argument proffered by the appellant is grounded on the public policy of the State of Illinois regarding public utilities as set forth in sections 32 and 38 of the Public Utility Act (Ill. Rev. Stat. 1981, ch. 111²/₃, pars. 32, 38). Section 32 states in part the duty of public utilities:

"Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 32.)

And section 38 provides in part:

"No public utility shall establish or maintain any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either as between localities or as between classes of service.

\* \* \*

Every public utility shall, upon reasonable notice, furnish to all persons who may apply therefor and be reasonably entitled thereto, suitable facilities and service, without discrimination

and without delay." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 38.)

It is the village's position that the plaintiff utility is discriminating against that part of the public located within the village of Shorewood by reserving a sewage plant capacity for other members of the public in other areas served by the utility.

While the statute cited by the village and the cases it references that construe the statute set forth a rule of public utility law which requires utilities to provide services without discrimination in a mandated area of service, we believe the rule is not pertinent under the facts before us. It is true that the Will County Water Company has additional capacity at its sewer plant which is currently unused. It is also true, and the company concedes, that it wishes to reserve this additional capacity to provide sewer service direct to customers in areas for which the company holds a certificate of public convenience and necessity. Finally, from the record of the lower court proceedings, we learn that the Will County Water Company's provision of service to the village of Shorewood is pursuant to a wholesale service contract entered into with the village and is not direct service to customers mandated by a certificate of public convenience and necessity issued by the Illinois Commerce Commission.

■ Where a utility company seeks and is granted the right to provide direct retail service to customers in a given area, certain reciprocal rights and duties arise by operation of law between the utility and the public it undertakes to serve. (30 Ill. L. & Prac. *Public Utilities* sec. 4 (1957).) The rights enjoyed by utility companies that seek and are granted such status include the assurance of a reasonable return for its service and the protection from ruinous competition. (30 Ill. L. & Prac. *Public Utilities* sec. 11 (1957).) However, with such status comes the duty to serve all of the public in a prescribed area on equal terms. By statute, this special status is conferred by a certificate of public convenience and necessity. Ill. Rev. Stat. 1981, ch. 111²/₃, par. 56.

■ As previously stated, the Will County Water Company does not provide direct service to the residents of the village of Shorewood as a public utility, but rather, it provides services pursuant to a wholesale contract with the village. The utility company has no certificate of public convenience and necessity to serve customers in the village of Shorewood. The rights and corresponding duties which characterize the status of a public utility are not applicable under the instant facts. A utility company has no obligation to provide service as a public utility outside the areas in which it is mandated, by a certificate of public convenience and necessity, to offer service. *Chicago District Pipeline*

*Co. v. Illinois Commerce Com.* (1935), 361 Ill. 296, 197 N.E. 873.

Accordingly, we conclude that the circuit court of Will County did not err when it refused to overlay the duties of a public utility with the contractual duties of the plaintiff in the case *sub judice.* The court correctly declared the rights of the parties under the contract, and correctly found that the defendant village had no right to demand that additional homes be connected to the village sewer system which was serviced by the plaintiff utility company.

Affirmed.

BARRY and ALLOY, JJ., concur.